UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JPMORGAN CHASE BANK, N.A.,

       Plaintiff,

v.                              Case No: 2:23-cv-430-JES-NPM

INOVA INTERNATIONAL LLC and
JOHN LE BOEUF,

       Defendants.

_____

## OPINION AND ORDER

This matter comes before the Court on plaintiff's Emergency Brief in Support of its Application for an Order to Show Cause and Temporary Restraining Order and Other Relief (Doc. #4) filed on June 14, 2023. "JPMorgan seeks a money judgment and to foreclose on the collateral and concurrently requests an Order to Show Cause with Temporary Restraining Order to prohibit the borrower and Mr. Le Boeuf from dissipating the collateral until a hearing can be held." (Doc. #4, p. 5.)

Plaintiff sent a copy of the Verified Complaint and the motion by overnight mail to defendants. (Doc. #9.) On June 22, 2023, defendants filed a Response to Plaintiff's Emergency Brief of in Support of its Application for an Order to Show Cause and Temporary Restraining Order and Other Relief (Doc. #10) and the Declaration of John Le Boeuf (Doc. #11). Plaintiff filed a Reply Brief (Doc. #22) on July 17, 2023. Given the notice to and responses by

defendants, the Court treats plaintiff's Emergency Brief as a motion for a preliminary injunction and an order to show cause. For the reasons set forth below, both requests are denied.

I.

On June 14, 2023, JPMorgan Chase Bank, N.A. (JPMorgan) filed a Verified Complaint (Doc. #1) against Inova International LLC (borrower or Inova) and its sole managing member John Le Boeuf (Mr. Le Boeuf). JPMorgan is the present holder of loan documents initially entered between First Republic Bank and the borrower Inova. At issue are a Loan Agreement, Security Agreement, a Promissory Note for the principal amount of $2,000,000 (term loan), and a Promissory Note in the principal amount of $1,000,000 (line of credit) all dated December 30, 2021. The entire unpaid principal balance on the line of credit was due on December 30, 2022, but it was not repaid. It is alleged that Mr. Le Boeuf was also in default for breaching the Financial Covenants under the Loan Agreement. (Doc. #1-1, Exh. A, 4.1(b).)

As a result of the defaults, the parties entered into a Loan Modification and Reaffirmation Agreement (the Modification Agreement). (Doc. #1-5.) The Modification Agreement required an immediate fee of $2,000 and reimbursement of attorney's fees and costs regarding the defaults not exceeding $6,000. The maturity date on the line of credit was extended until the effective date of the Agreement, and the maturity date on the term note was

accelerated to June 30, 2023.  Borrower was required to make a payment of $988,258.13 under the line of credit on or before April 21, 2023, and $250,000 for the outstanding principal on the term note with another $250,000 due on or before May 21, 2023, on the term note.  (Doc. #1-5, Exh. E.)  None of these payments were made, and First Republic sent the borrower and Mr. Le Boeuf a Notice of Default and Acceleration on April 25, 2023.  (Doc. #1-6, Exh. F.)

Count I of the Complaint alleges defaults on the line of credit and term loan and seeks judgment for all amounts due; Count II alleges a claim for breach of contract of the same loan documents based on the default of the terms of the notes; Count III seeks possession of collateral located at 4851 Tamiami Trail North, Suite 200, Naples, Florida by writ of replevin; Count IV seeks to foreclose its security interest in the collateral; Count V and VI seek relief on the Guaranty of Mr. Le Boeuf to pay all obligations of the borrower.  (Doc. #1-2, Exh. B.)

**II.**

"A federal court sitting in diversity applies the substantive law of the state in which it sits, including that state's choice of law."  <u>Ferrero v. Associated Materials Inc.</u>, 923 F.2d 1441, 1444 (11th Cir. 1991).  "'[T]he laws of the jurisdiction where the contract was executed governs interpretation of the substantive issues regarding the contract.'"  <u>Prime Ins. Syndicate, Inc. v.</u>

B.J. Handley Trucking, Inc., 363 F.3d 1089, 1091 n.1 (11th Cir. 2004) (quoting Lumbermens Mut. Cas. Co. v. August, 530 So. 2d 293, 295 (Fla. 1988)). "Under Florida law, contractual choice-of-law provisions are presumptively enforceable." Viridis Corp. v. TCA Glob. Credit Master Fund, LP, 721 F. App'x 865, 873 (11th Cir. 2018). In this case, the parties agree that California law applies to the substantive contract issues.

"[F]ederal courts are required to apply the federal rules of civil procedure to the exclusion of any contrary state procedure as long as the rule is both constitutional and within the scope of the rules' enabling act." Id. at 1448 (citing Hanna v. Plumer, 380 U.S. 460, 470-71 (1965)). "In the light of Ferrero's holding that Rule 65 is a valid procedural rule that incorporates the federal standard for preliminary injunctions, that standard will always apply in diversity cases, regardless of the provisions of state law." Vital Pharms., Inc. v. Alfieri, 23 F.4th 1282, 1296 (11th Cir. 2022) (Pryor, J., concurring) (citation omitted). Cf. Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc., 527 U.S. 308, 318-19 (1999) ("[T]he substantive prerequisites for obtaining an equitable remedy as well as the general availability of injunctive relief are not altered by [Rule 65] and depend on traditional principles of equity jurisdiction." (quoting 11A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 2941, p. 31 (2d ed. 1995))).

"The purpose of a temporary restraining order, like a preliminary injunction, is to protect against irreparable injury and preserve the status quo until the district court renders a meaningful decision on the merits." Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1223, 1231 (11th Cir. 2005) (citation omitted). "The court may issue a preliminary injunction only on notice to the adverse party." Fed. R. Civ. P. 65(a)(1). "A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the burden of persuasion as to the four requisites." Vital Pharms., Inc. v. Alfieri, 23 F.4th 1282, 1291 (11th Cir. 2022) (quoting Forsyth Cnty. v. U.S. Army Corps of Eng'rs, 633 F.3d 1032, 1039 (11th Cir. 2011)). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). All four requirements must be established. "A preliminary injunction is an extraordinary remedy never awarded as of right." Winter, 555 U.S. at 24.

JPMorgan also seeks an order to show cause, essentially requiring defendants to show why JPMorgan should not be granted the relief it seeks.

**III.**

JPMorgan argues that a temporary restraining order/preliminary injunction is necessary to keep defendants from liquidating accounts receivable and inventory, thus compromising collateral before it can be identified and possessed by JPMorgan. In response, defendants argue that irreparable harm cannot be established by a vague concern that collateral could be liquidated and because damages can be satisfied by repayment. Defendants do not address the other elements necessary for a preliminary injunction, so the Court deems these elements to be uncontested for purposes of the motion.

Alan Le Vine (Doc. #4-1), a former Senior Credit Officer at First Republic Bank and current employee holdover, submitted an Affidavit stating that First Republic Bank was closed on May 1, 2023, by the California Department of Financial Protection and Innovation. The FDIC was appointed as receiver and entered into a purchase and assumption agreement with JPMorgan to assume all deposits and assets of First Republic, including the loans at issue in this case. First Republic Bank and JPMorgan were assured by John Le Boeuf, founder and CEO of Inova, that the payments due were forthcoming. According to Mr. Le Vine, time and again, the funds were not delivered. The current principal balance due on the term loan is $1,532,495.33, and the current principal balance

due on the line of credit is $983,500, with interest accruing and attorney's fees and costs.

Plaintiff's position is that the borrower's failure to follow through and deliver payments while advising that the funds were on the way raises concerns about defendants' intentions.  Further, the deposit account of borrower only contains $3,200, and Mr. Le Boeuf is required to personally maintain liquid assets.  The borrower's conduct and the defaults raise concerns by JPMorgan that the collateral securing repayment is in jeopardy.  This collateral includes essentially all assets[1], including inventory

---

[1] The UCC Financing Statement describes the collateral as "[a]ll assets of Debtor, whether now owned or hereafter acquired, together with all products and proceeds thereof." (Doc. #4-7.) The Security Agreement (Doc. #4-3) grants a security interest in the collateral described as: "All rights, title and interest of Borrower in and to all of the following assets whether currently existing or hereafter arising: Equipment, Inventory, Fixtures, other Goods, Instruments, Documents, Chattel Paper (including without limitation Electronic Chattel Paper), General Intangibles, Payment Intangibles, Accounts and all other obligations now or hereafter owing to Borrower, all Deposit Accounts, certificates of deposit, Investment Property, Financial Assets, Letters of Credit Rights, all Commercial Tort Claims and any other causes of action against third parties (excluding only claims for death or personal injury), all Supporting Obligations for any of the foregoing, all Proceeds (including without limitation insurance proceeds) from and products of and accessions to any of the foregoing and all books and records relating to any of the foregoing." (Security Agreement, § 1.3.)  "Borrower (a) shall maintain the Collateral and all of Borrower's other assets in good operating and repair condition; (b) shall not use the Collateral or any of Borrower's other assets in any unlawful business or for any unlawful purpose; and (c) shall not abandon the Collateral or any of Borrower's other assets." (Id., § 4.9.)

of portable patient monitoring equipment and accounts receivable. (Doc. #4-1, ¶¶ 23-24.)

Mr. Le Boeuf filed a Declaration (Doc. #11) as personal guarantor of the term loan and line of credit. Mr. Le Boeuf states that Inova made every monthly loan payment without fail, and in December 2022, First Republic notified Inova that it would not be renewing the Line of Credit. On or about January 10, 2023, First Republic Bank notified Inova that Inova did not have the liquid cash on hand, therefore requiring full repayment of all funds due and owing on the term loan and line of credit. On or about April 20, 2023, Inova and First Republic Bank entered an agreement extending the maturity date of the line of credit but moved up the date on the term loan. After First Republic Bank was closed, days went by with no communication regarding the loans. On May 5, 2023, David Jochim emailed Inova notifying them that the point of contact was no longer at the bank and that Alan Le Vine would be the point of contact. On or about May 10, 2023, Mr. Le Vine called and left a message for a status update and Mr. Le Boeuf responded the same day. Mr. Le Boeuf never received a response or heard from Mr. Le Vine again. On May 31, 2023, Mr. Le Boeuf received an email from Desha Perez inquiring about the June 2023 scheduled payment. Mr. Le Boeuf provided updates but no further payments. Defendants' Answer and Affirmative Defenses (Doc. #23) follow a similar path.

### A. Substantial Likelihood of Success

"Likelihood of success on the merits 'is the most important' Winter factor; if a movant fails to meet this 'threshold inquiry,' the court need not consider the other factors, [] in the absence of 'serious questions going to the merits.'" Disney Enterprises, Inc. v. VidAngel, Inc., 869 F.3d 848, 856 (9th Cir. 2017) (internal citations omitted).  "A substantial likelihood of success on the merits requires a showing of only *likely* or probable, rather than *certain,* success." Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1223, 1232 (11th Cir. 2005) (citation omitted).  JPMorgan argues that the defaults are "undisputable" and "incontrovertible", and the right to foreclose on collateral  is clearly permitted under California law and Section 7.7 of the Security Agreement ("The Lender may sell or dispose of the Collateral at public or private sale, in one or more sales, as a unit or in parcels, at wholesale or retail, and at such time and place and on such terms as the Lender may determine.").

"A security interest attaches to collateral when it becomes enforceable against the debtor with respect to the collateral, unless an agreement expressly postpones the time of attachment." Cal. U. Com. Code, § 9203.  Upon a default under the loan documents, the remedies under the Security Agreement include acceleration, extensions of credit, requiring the assembly of collateral, taking possession of collateral "without a breach of

the peace" or if by judicial process, the borrower: (1) waives security or bond, (2) waives "any demand for possession prior to the commencement of any suit or action to recover possession", and (3) waives any requirement that the Lender retain possession of and not dispose of such Collateral until after trial or final judgment."  (Doc. #1-2, ¶¶ 7-7.5.)  By judicial action,

> [t]he Lender may reduce its claims for breach of any of the Obligations to judgment and foreclose or otherwise enforce its security interest in any or all of the Collateral by any available judicial procedure. If the Lender has reduced its claims for breach of any of the obligations to judgment, the lien of any levy which may be made on any or all of the Collateral by virtue of any execution based upon such judgment shall relate back to the date of the Lender's perfection of its security interest in such Collateral. A judicial sale pursuant to such execution shall constitute a foreclosure of the Lender's security interest by judicial procedure, and the Lender may purchase at such sale and thereafter hold the Collateral free of all rights of Borrower therein."

(Id., ¶ 7.15.)   After default, a secured party may "[r]educe a claim to judgment, foreclose, or otherwise enforce the claim, security interest, or agricultural lien by any available judicial procedure."  Cal. Com. Code § 9601(a)(1).  "If a secured party has reduced its claim to judgment, the lien of any levy that may be made upon the collateral by virtue of an execution based upon the judgment…."  Cal. U. Com. Code, § 9601(e).  "A secured party shall proceed in a commercially reasonable manner if both of the

following apply with respect to the secured party: (1) It undertakes to collect from or enforce an obligation of an account debtor or other person obligated on collateral[,] (2) It is entitled to charge back uncollected collateral or otherwise to full or limited recourse against the debtor or a secondary obligor." Cal. U. Com. Code, § 9607(c). "A secured party may deduct from the collections made pursuant to subdivision (c) reasonable expenses of collection and enforcement, including reasonable attorney's fees and legal expenses incurred by the secured party." Cal. U. Com. Code, § 9607(d).

Inova admits that it failed to make the required payments and that it is in default under the terms of the Notes and other loan documents, but also asserts affirmative defenses including that JPMorgan did not suffer damages or loss because it did not lend the funds to Inova and First Republic's prior material breach bars recovery. (Doc. #23, ¶¶ 16, 26 & p. 10.) JPMorgan has not reduced the defaults to judgment and Inova denies that JPMorgan is entitled to possession of the collateral. (Id., ¶ 31.)

While the Court finds that it is likely that plaintiff will succeed on the merits based on defendants' failure to pay the loan and line of credit after Inova had notice of the default, the affirmative defenses and the original lender's closure will require litigation.

**B. Irreparable Injury/Harm**

A plaintiff seeking preliminary injunctive relief must demonstrate that "irreparable injury is *likely* in the absence of an injunction." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22 (2008) (citations omitted). "'The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.'" Sampson v. Murray, 415 U.S. 61, 90 (1974) (quoting Virginia Petroleum Jobbers Ass'n v. Fed. Power Comm'n, 259 F.2d 921, 925 (D.C. Cir. 1958)). Also, "[m]onetary injury is not normally considered irreparable." hiQ Labs, Inc. v. LinkedIn Corp., 31 F.4th 1180, 1188 (9th Cir. 2022) (citation omitted).

"The rule requiring a judgment was a product, not just of the procedural requirement that remedies at law had to be exhausted before equitable remedies could be pursued, but also of the substantive rule that a general creditor (one without a judgment) had no cognizable interest, either at law or in equity, in the property of his debtor, and therefore could not interfere with the debtor's use of that property." Grupo Mexicano, 527 U.S. at 319–20. "Ordinarily, the general federal rule of equity is that a court may not reach a defendant's assets unrelated to the underlying litigation and freeze them so that they may be preserved to satisfy a potential money judgment." Mitsubishi Int'l Corp.

v. Cardinal Textile Sales, Inc., 14 F.3d 1507, 1521 (11th Cir.
1994) (citations and internal quotation marks omitted).

Plaintiff did not file this request for a temporary
restraining order until several months after the Notice of Default
and Acceleration (Doc. #1-6) was issued to defendants. JPMorgan
has shown a current lack of funds available in the deposit account
and Mr. Le Boeuf's failure to personally maintain liquid assets
but JPMorgan has not alleged or established that collateral has
been removed or is missing. Inova admits that the collateral has
not been taken for a tax, assessment, and is not under an execution
or attachment against the property. (Doc. #23, ¶¶ 36-37.)

> To sustain the challenged order would create
> a precedent of sweeping effect. This suit, as
> we have said, is not to be distinguished from
> any other suit in equity. What applies to it
> applies to all such. Every suitor who resorts
> to chancery for any sort of relief by
> injunction may, on a mere statement of belief
> that the defendant can easily make away with
> or transport his money or goods, impose an
> injunction on him, indefinite in duration,
> disabling him to use so much of his funds or
> property as the court deems necessary for
> security or compliance with its possible
> decree. And, if so, it is difficult to see why
> a plaintiff in any action for a personal
> judgment in tort or contract may not, also,
> apply to the chancellor for a so-called
> injunction sequestrating his opponent's
> assets pending recovery and satisfaction of a
> judgment in such a law action. No relief of
> this character has been thought justified in
> the long history of equity jurisprudence.

De Beers Consol. Mines v. United States, 325 U.S. 212, 222–23
(1945).  The Court does not find support for the "grave concerns"
held by JPMorgan or that these concerns are sufficient to counter
the irreparable harm to defendant's assets.

### C. Balance of Equities

"To qualify for injunctive relief, the plaintiffs must
establish that the balance of equities tips in their favor. [] In
assessing whether the plaintiffs have met this burden, the district
court has a duty to balance the interests of all parties and weigh
the damage to each."  Stormans, Inc. v. Selecky, 586 F.3d 1109,
1138 (9th Cir. 2009) (internal citations and alterations omitted).
To 'balance the equities' is "to explore the relative harms to
applicant and respondent, as well as the interests of the public
at large."  Barnes v. E-Sys., Inc. Grp. Hosp. Med. & Surgical Ins.
Plan, 501 U.S. 1301, 1305 (1991).

Balancing the interests of the parties, the Court finds that
the interests of defendants outweigh the interests of plaintiff at
this stage of the proceedings.  The request to seize and sell the
collateral will effectively put defendant out of business and lower
JPMorgan's chances of obtaining a money judgment.

### D. Public Interest

"When the reach of an injunction is narrow, limited only to
the parties, and has no impact on non-parties, the public interest
will be at most a neutral factor in the analysis rather than one

- 14 -

that favors granting or denying the preliminary injunction."
Stormans, 586 F.3d at 1138-39 (citation and internal alterations omitted).  The Court finds this element is neutral in this case.

**E. Order to Show Cause**

JPMorgan also seeks an order to show cause requirement defendants to show why JPMorgan is not entitled to the relief it seeks.  Defendants have filed and Answer and Affirmative Defenses (Doc. #23), and they are required to make no further showing at this time.  This portion of the motion is denied.

Accordingly, it is hereby

**ORDERED:**

Plaintiff's Emergency Brief in Support of its Application for an Order to Show Cause and Temporary Restraining Order and Other Relief (Doc. #4) is **DENIED.**

**DONE and ORDERED** at Fort Myers, Florida, this __31st__ day of July 2023.

 

 

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record