**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

**JPMORGAN CHASE BANK, N.A.,**
Plaintiff,

v. 2:23-cv-430-NPM

**INOVA INTERNATIONAL LLC**
and **JOHN LE BOEUF,**
Defendants.

---

**ORDER GRANTING SUMMARY JUDGMENT**

Defendant Inova International failed to make timely payments toward a loan and a line of credit. Upon a default and acceleration, it failed to pay all amounts due. Defendant John Le Boeuf guaranteed Inova's obligations, but he failed to pay as well. As the holder of the note, the guaranty, and all other loan documents, plaintiff JPMorgan seeks a monetary judgment for the unpaid principal, accrued interest, and other amounts due under the loan documents. There being no genuine issue of any material fact, JPMorgan is entitled to summary judgment in its favor.[1]

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if, under the applicable substantive law, it might affect the outcome of the case. *Hickson Corp. v.*

[1] The parties consented to proceed before a magistrate judge for all proceedings. (Doc. 32).

*N. Crossarm Co.*, 357 F.3d 1256, 1259 (11th Cir. 2004). The moving party bears the initial burden of showing, by reference to materials on file, that there are no genuine issues of material fact to be decided at trial. *Id.* at 1260 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). When a defendant asserts an affirmative defense that the plaintiff contests, however, the analysis changes.

It is well settled that whoever bears the burden of proof at trial also bears this burden at summary judgment. *See Celotex Corp.*, 477 U.S. at 322. This principle applies no less when a plaintiff moves for summary judgment, and the defendant has pleaded affirmative defenses. *See Berkley Ins. Co. v. Tumbleson White Constr., Inc.*, No. 1:17-cv-122-MW/GRJ, 2018 WL 6492969, *5 (N.D. Fla. July 3, 2018). Since the burden of proving an affirmative defense at trial rests with the defendant, on a plaintiff's motion for summary judgment, the defendant bears the burden of showing the affirmative defense applies. *Blue Cross and Blue Shield v. Weitz*, 913 F.2d 1544, 1552 (11th Cir. 1990). Only upon such a showing does the burden then shift to the plaintiff to rebut that affirmative defense. *See id.* at 1552 n.13.

Here, the affidavits, deposition testimony, and other material in the record leave no material fact in dispute. On December 30, 2021, Inova entered into a Loan Agreement with First Republic Bank, with Le Boeuf as the guarantor. (Docs. 57-1; 57-7). Under this arrangement, First Republic extended Inova a $1 million line of

credit and a $2 million term loan.[2] And Le Boeuf was required to maintain liquid assets with a fair market value of $3,600,000. (Doc. 57-1, § 9.3).

For the Line-of-Credit Note, the unpaid principal balance and all accrued interest were due on the maturity date of December 30, 2022.[3] (Doc. 57-4 § 2.3(c)). But neither Inova nor Le Boeuf satisfied the fully mature note. And in January 2023, Le Boeuf submitted a financial statement revealing his liquidity had fallen below the required minimum. (Doc. 57 at 3). Negotiations ensued, and on April 20, 2023, the parties executed a Loan Modification Agreement. (Doc. 57-5).[4]

Therein, Inova and Le Boeuf acknowledged that they had breached the Loan Documents. (Doc. 57-5, § 4).[5] And under the agreement, the Loan Documents were amended if, among other things, First Republic received $8,000 in fees from Inova. (Doc. 57-5, § 3). These amendments included an extension of the maturity date for the Line-of-Credit Note to April 20, 2023, an acceleration of the maturity date for the Term Note to June 30, 2023; a payment of $988,258.13 toward the line of credit

---

[2] Each loan was evidenced by a promissory note (hereinafter "Term Note," "Line-of-Credit Note," or collectively "Notes"). (Docs. 57-3, 57-4).

[3] The Term Note contained a similar provision but with a maturity date of December 30, 2026. (Doc. 57-3 § 2.3(b)).

[4] The Loan Agreement, the Notes, the Continuing Guaranty, and the Loan Modification Agreement are collectively referred to as the "Loan Documents."

[5] First Republic "reserve[d] its rights and remedies with regard to all defaults existing under the Loan Documents." (Doc. 57-5 § 2).

by April 21, 2023; a payment of $250,000 toward the term loan by April 21, 2023; and another payment of $250,000 toward the term loan by May 21, 2023. (Doc. 57-5, §§ 4, 6). But neither Inova nor Le Boeuf paid the $8,000 in fees, nor did they make the contemplated loan payments.

So, on April 25, 2023, First Republic sent a notice of default and acceleration to Inova and Le Boeuf, demanding payment of all amounts due. (Doc. 57-6). Shortly thereafter, regulatory authorities placed First Republic under FDIC receivership. And on May 1, 2023, JPMorgan acquired most of First Republic's assets, including the Loan Documents with Inova and Le Boeuf. A week later, Le Boeuf stated that he had arranged for a payment by wire transfer from his "investment firm." (Doc. 4-9 at 3; Doc. 59-2, 54:18–55:4). But with no payment by wire or otherwise, this suit followed.

Having failed to pay the loans, Defendants are unquestionably in breach. So the resolution of this motion turns on various arguments that Defendants have labeled as affirmative defenses. They contend JPMorgan lacks standing, which, as a matter of fact, is a jurisdictional argument. But this rests on a meritless quibble about JPMorgan's affidavits, and not on any controverted facts. (Doc. 56, 21:5–21). The affiants testify that JPMorgan acquired the Loan Documents. (Doc. 59-1, ¶ 2; Doc. 67-1, ¶ 3). And in nothing more than ipse dixit fashion, Defendants contend that the affiants do not testify from personal knowledge. The affiants, however, aver

as much, and they also testify to the circumstances by which their knowledge was acquired. (Doc. 59-1, ¶ 1; Doc. 67-1, ¶¶ 1–2). In fact, Defendants acknowledge, in both their answer and in their opposition to summary judgment, that affiant Alan Le Vine—who worked at both First Republic and JPMorgan—was personally involved with the loans. (Doc. 58 at 8; Doc. 62,¶¶ 19–20); *see also* Doc. 59-5 (emails between Le Vine and Le Boeuf about the loans). Thus, JPMorgan has standing, and we have jurisdiction.

Defendants also suggest that a condition precedent was not satisfied. They acknowledge receipt of the notice of default and acceleration demanding payment in full, but they argue that this did not suffice because it came from First Republic before JPMorgan acquired the loan file. They offer no authority, however, for the proposition that the next creditor in the chain must duplicate that effort and resend the notice and demand. And they ignore that the promissory notes each provide: "The Lender, at its option and without notice to or demand on Borrower or any other Person, may terminate any or all obligations which it may have to extend further credit to Borrower and may declare the entire unpaid principal balance of this Note and all accrued interest thereon to be immediately due and payable upon the occurrence of any Event of Default." (Doc. 1-3, ¶ 7; Doc. 1-4, ¶ 7).

Lastly, Defendants argue that they should escape liability because JPMorgan acted with unclean hands. The notes provide, and the parties agree, that California

law governs. And in California, "the unclean hands doctrine applies not only to equitable claims, but also to legal ones." *Adler v. Fed. Republic of Nigeria*, 219 F.3d 869, 877 (9th Cir. 2000). When analyzing whether a party's misconduct amounts to unclean hands, California courts consider: (1) analogous case law, (2) the nature of the misconduct, and (3) the relationship of the misconduct to the claimed injuries. *Saks v. Int'l Longshore & Warehouse Union-Pac. Mar. Ass'n Benefit Plans*, 637 F. App'x 282, 284 (9th Cir. 2015). Further, "the misconduct must prejudicially affect the rights of the person against whom the relief is sought so that it would be inequitable to grant such relief." *Id*. (quoting *Kendall-Jackson Winery, Ltd. v. Superior Court*, 90 Cal. Rptr. 2d 743, 750 (Cal. Ct. App. 1999)).

To satisfy the first prong of an unclean hands defense, the analogous case law need not be precisely on point. *Saks*, 637 F. App'x at 284. But Defendants made no effort to supply any. While "the application of the unclean hands defense is usually a question of fact," when there is no analogous case applying the doctrine, it can be determined as a matter of law. *E. W. Bank v. Rio Sch. Dist.*, 185 Cal. Rptr. 3d 676, 683 (Cal. Ct. App. 2015). Thus, Defendants' failure "to meet the first prong of the three-part test alone is sufficient to warrant the denial of the defense." *hiQ Labs, Inc. v. LinkedIn Corp.*, 639 F. Supp. 3d 944, 962 (N.D. Cal. 2022) (quoting *E. W. Bank*, 185 Cal. Rptr. 3d at 751–52).

As for the factual underpinning of their argument, Defendants suggest that in the weeks following JPMorgan's acquisition of the loans, they were not unequivocally advised to that effect. But they offer nothing to show how that could have caused them any prejudice or injury. There is no contention, much less any reason to believe, that if any payments had been made after JPMorgan acquired the loans and prior to this suit, Defendants' obligations would not have been reduced accordingly. In sum, there is no genuine issue of material fact about whether it would be inequitable to grant JPMorgan's request for relief, and the unclean hands defense fails as a matter of law.[6]

With liability established and no viable defense, JPMorgan is entitled to judgment in its favor for the amounts due under the Loan Documents. And the Loan Documents further provide that it is entitled to recover its attorneys' fees, costs, and non-taxable expenses. (Doc. 1-1, ¶ 6.5; Doc. 1-3, ¶ 10; Doc. 1-4, ¶ 10). The parties are directed to engage in a robust exchange of information; to confer at length in person or by videoconference; and to make every reasonable and good-faith effort to resolve the amount of fees, costs, and non-taxable expenses to be awarded. For

---

[6] While Defendants' answer presents other "affirmative defenses" (Doc. 58), their response to JPMorgan's summary-judgment motion abandons all but the arguments discussed herein. *See Orlando Utilities Comm'n v. Century Coal, LLC*, No. 6:08-cv-1008-ORL-31KRS, 2008 WL 4570270, *2 (M.D. Fla. Oct. 14, 2008) (a defendant abandons affirmative defenses not raised in a summary-judgment response); *Shenzhen Kinwong Elec. Co. v. Kukreja*, 574 F. Supp. 3d 1191, 1241–42 (S.D. Fla. 2021) (defendants "cannot readily complain about the entry of a summary judgment order that did not consider an argument they chose not to develop for the district court at the time of the summary judgment motions").

any unresolved issues about fees or non-taxable expenses, JPMorgan may file a Local Rule 7.01(c) motion by December 30, 2026. To tax costs, it may also file a proposed bill of costs within a reasonable time after the entry of judgment.

JPMorgan's motion for summary judgment (Doc. 59) is **GRANTED**. The **CLERK** is **DIRECTED** to enter judgment in favor of JPMorgan as follows:

> Inova International LLC and John Le Boeuf are jointly and severally liable to JPMorgan Chase Bank, N.A., for $3,066,739.28, with additional prejudgment interest accruing from September 4, 2024, to the date of judgment at the default rate of interest in the promissory notes (Doc. 1-3, ¶ 4; Doc. 1-4, ¶ 4), which are incorporated into the judgment by reference, and with post-judgment interest accruing by statute.
>
> It is further ordered and adjudged that the judgment debtors must complete under oath Florida Rule of Civil Procedure Form 1.977 (Fact Information Sheet), including all required attachments, and serve it on the judgment creditor's attorney within 45 days from the date of this final judgment, unless the final judgment is satisfied or post-judgment discovery is stayed.
>
> Jurisdiction of this case is retained to enter further orders that are proper to compel the judgment debtors to complete Form 1.977, including all required attachments, and serve it on the judgment creditor's attorney.

With the entry of judgment, the **CLERK** is further directed to terminate all scheduled events and close the file.

**ORDERED** on September 30, 2026

NICHOLAS P. MIZELL
United States Magistrate Judge